# Third District Court of Appeal

## State of Florida

Opinion filed June 11, 2025.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D24-0417
Lower Tribunal No. 23-26299-CA-01
_____

**Sarah Steinmetz,**
Appellant,

vs.

**Lindsey Pickholtz, et al.,**
Appellees.

An Appeal from the Circuit Court for Miami-Dade County, Tanya Brinkley, Judge.

Stumphauzer Kolaya Nadler & Sloman, PLLC, Jeffrey H. Sloman, Amy M. Bowers, Frank A. Shepherd, P.A., and Frank A. Shepherd, for appellant.

Marcus Neiman Rashbaum & Pineiro LLP, and Derick R. Vollrath (Fort Lauderdale), for appellees.

Before FERNANDEZ, LINDSEY, and MILLER, JJ.

MILLER, J.

Appellant, Sarah Steinmetz, challenges a final order dismissing the five-count complaint she filed against appellees, Lindsey Pickholtz and Steven Gordon, with prejudice. On appeal, she contends the trial court erred in concluding she failed to state viable causes of action under Valdes v. GAB Robins North America, Inc., 924 So. 2d 862 (Fla. 3d DCA 2006), and its progeny or, alternatively, in denying her leave to amend. We have jurisdiction. See Fla. R. App. P. 9.030(b)(1)(A). We affirm the dismissal of the abuse of process and intentional infliction of emotional distress claims but reverse the "with prejudice" designation and the dismissal of the remaining counts.

I

Steinmetz's complaint alleged malicious prosecution, abuse of process, and intentional infliction of emotional distress against Pickholtz and conspiracy to commit malicious prosecution against both appellees. The complaint chronicled a series of events spanning a two-and-a-half-year period that began when Steinmetz sold her Aventura condominium to Pickholtz and Gordon, a married couple who moved to Miami from the Northeast. The parties became friends, but their relationship deteriorated after Pickholtz allegedly placed a prank telephone call to a fellow condominium dweller. Steinmetz contended that Pickholtz then fabricated

2

evidence—including "spoofed" telephone calls and text messages—with Gordon's assistance, which led a court to enter a temporary injunction against her, law enforcement to arrest her, and prosecutors to file an aggravated stalking information against her.[1] Pickholtz voluntarily dismissed the civil injunction, the State announced a nolle prosequi in the criminal case, and Steinmetz subsequently brought suit.

Pickholtz and Gordon moved to dismiss, contending the complaint failed to state a cause of action. Relying primarily on our decision in Valdes, the trial court granted the motion. Steinmetz then unsuccessfully sought clarification and leave to amend. This appeal followed.

## II

## A

We review de novo a trial court's order granting a motion to dismiss. Grove Isle Ass'n, Inc. v. Grove Isle Assocs., LLLP, 137 So. 3d 1081, 1089 (Fla. 3d DCA 2014). In doing so, we are confined to the four corners of the complaint and attachments, and we must accept all well-pleaded allegations as true. See Reid v. Daley, 276 So. 3d 878, 880 (Fla. 1st DCA 2019). In contrast, "we review the trial court's granting of dismissal with prejudice

---

[1] Appended to her 31-page complaint were various documents, including call logs, investigative reports, and emails.

versus without prejudice under an abuse of discretion standard." Pesce v. Morgan, 388 So. 3d 1107, 1108 (Fla. 3d DCA 2024). That discretion is not boundless. "A dismissal with prejudice should not be ordered without giving the party offering the pleading an opportunity to amend unless it appears that the privilege to amend has been abused or it is clear that the pleading cannot be amended to state a cause of action." Kapley v. Borchers, 714 So. 2d 1217, 1218 (Fla. 2d DCA 1998).

## B

Malicious prosecution, "a very ancient action," is a distinctive claim to recover "damages to person, property, or reputation, shown to have proximately resulted from a previous civil or criminal proceeding, which was commenced or continued without probable cause, but with malice, and which has terminated unsuccessfully." Tatum Bros. Real Est. & Inv. Co. v. Watson, 109 So. 623, 626 (Fla. 1926). To effectively plead such a claim under Florida law, the plaintiff must allege (1) the commencement of an original proceeding; (2) legal causation; (3) a bona fide termination in the plaintiff's favor; (4) the absence of probable cause; (5) malice; and (6) damages. See Alamo Rent-A-Car, Inc. v. Mancusi, 632 So. 2d 1352, 1355 (Fla. 1994). This dispute implicates the third element.

4

A bona fide termination "has been a critical element to proof of the tort of malicious prosecution since a very early date and[ ]has been described as 'a kind of pre-condition to the later action . . . .'" Loeb v. Teitelbaum, 432 N.Y.S.2d 487, 492 (N.Y. App. Div. 1980) (citations omitted). As Justice Scalia explained in the seminal case of Heck v. Humphrey, 512 U.S. 477 (1994),

> One element that must be alleged and proved in a malicious prosecution action is termination of the prior criminal proceeding in favor of the accused. This requirement avoids parallel litigation over the issues of probable cause and guilt . . . and it precludes the possibility of the claimant [sic] succeeding in the tort action after having been convicted in the underlying criminal prosecution, in contravention of a strong judicial policy against the creation of two conflicting resolutions arising out of the same or identical transaction. Furthermore, to permit a convicted criminal defendant to proceed with a malicious prosecution claim would permit a collateral attack on the conviction through the vehicle of a civil suit. This Court has long expressed similar concerns for finality and consistency and has generally declined to expand opportunities for collateral attack[.]

Id. at 484–85 (citation modified). In a more recent decision, McDonough v. Smith, 588 U.S. 109 (2019), the United States Supreme Court similarly summarized the underpinning policy as follows: "[M]alicious prosecution's favorable-termination requirement is rooted in pragmatic concerns with avoiding parallel criminal and civil litigation over the same subject matter and the related possibility of conflicting civil and criminal judgments, . . . [and]

5

likewise avoids allowing collateral attacks on criminal judgments through civil litigation." Id. at 117–18 (citations omitted).

Relying on our decision in Valdes, Pickholtz successfully argued below that Steinmetz failed to sufficiently allege that the voluntary dismissal of the civil injunction and the nolle prosequi of the criminal aggravated stalking case constituted "bona fide terminations" of the earlier proceedings, as is required to support malicious prosecution claims. In Valdes, the plaintiff was declared permanently disabled after he sustained an on-the-job injury. 924 So. 2d at 864. He received total disability benefits for a five-year-period, until his workers' compensation carrier videotaped him engaging in physical activities and confronted him with the footage in a deposition. Id. He was then reported to the State of Florida Division of Insurance Fraud. Id. The plaintiff was arrested and charged with a second-degree workers' compensation fraud-related felony. Id. at 864–65. The criminal charges were eventually abandoned, and the plaintiff sued his carrier and others for malicious prosecution, intentional infliction of emotional distress, civil conspiracy, and abuse of process. Id. at 865. The trial court dismissed the claims. Id.

Generally, whether a voluntary dismissal or nolle prosequi constitutes a bona fide termination sufficient to support a claim for malicious prosecution presents a factually dependent question, and therefore the issue is best

suited for the jury as the factfinder.  See Alamo Rent-A-Car, 632 So. 2d at 1356.  Notwithstanding this general rule, this court found in Valdes that the plaintiff's malicious prosecution claim was "fatally infirm" because it "fail[ed] to allege the 'bona fide' termination of a prior proceeding in [the plaintiff's] favor."  924 So. 2d at 866.  The panel stated that "[a]lleging only that a prior action ended favorably . . . is not enough," as "suits that terminate because of technical or procedural reasons or considerations other than the merits of the first suit, are not 'bona fide terminations' and will not support a malicious prosecution suit."  Id.  The court further explained,

> [Bona fide termination] is a fancy phrase which means that [a plaintiff alleging malicious prosecution must establish that] the first suit, on which the malicious prosecution suit is based, ended in a manner indicating the original defendant's (and current plaintiff's) innocence of the charges or allegations contained in the first suit, so that a court handling the malicious prosecution suit, can conclude with confidence, that the termination of the first suit was not only favorable to the defendant in that suit, but also that it demonstrated the first suit's lack of merit.

Id. (quoting Doss v. Bank of Am., N.A., 857 So. 2d 991, 994 (Fla. 5th DCA 2003)); see also Thompson v. Clark, 596 U.S. 36, 45 (2022) ("In most American courts that had considered the question as of 1871, the favorable termination element of a malicious prosecution claim was satisfied so long as the prosecution ended without a conviction. . . .  The 'technical prerequisite [was] only that the particular prosecution be disposed of in such

7

a manner' that it 'cannot be revived.'") (quoting <u>Clark v. Cleveland</u>, 6 Hill 344, 346 n.a (N.Y. Sup. Ct. 1844)) (citations omitted); <u>Laskar v. Hurd</u>, 972 F.3d 1278, 1292 (11th Cir. 2020) ("As common-law courts on both sides of the Atlantic stressed, a termination on technical grounds did not cure the harm that malicious prosecution caused. Instead, the favorable-termination requirement prevented plaintiffs from using the tort to collaterally attack ongoing criminal proceedings or unfavorable terminations. And under prevailing standards [under the common law], a plaintiff could satisfy the favorable-termination element of malicious prosecution by proving that a court formally ended the prosecution in a manner that was not inconsistent with his innocence.") (citations omitted); <u>see also</u> <u>id.</u> 1286–90 (analyzing pre-1776 English common law and early American case law to discern that "a formal end to a prosecution in a manner not inconsistent with a plaintiff's innocence is a favorable termination"); § 2.01, Fla. Stat. (2024) ("The common and statute laws of England which are of a general and not a local nature, with the exception hereinafter mentioned, down to the 4th day of July, 1776, are declared to be of force in this state . . . .").

Here, Steinmetz alleged that Pickholtz, with Gordon's assistance, instigated the former proceedings with improper purpose and without probable cause. She claimed that both cases were prosecuted as a result

8

of appellees' malfeasance. As for the criminal case, she specifically alleged she was innocent of any wrongdoing, and the State ultimately announced a nolle prosequi because it lacked probable cause. As to the underlying civil injunction, Steinmetz alleged that Pickholtz voluntarily dismissed the case exactly one month before an evidentiary hearing on a permanent injunction, and that a later forensic analysis of Steinmetz's cell phone "definitively prove[d] that [her] cell phone did not call or send any communications to Pickholtz's cell phone (or anyone else) on the dates and times referenced in the [police] reports."

We conclude these allegations exceed the neutral dismissal pleading the Valdes court shunned and were therefore adequate to overcome a motion to dismiss. See Union Oil of Cal. Amsco Div. v. Watson, 468 So. 2d 349, 353 (Fla. 3d DCA 1985) ("[W]hether a withdrawal or abandonment of the proceedings constitutes a favorable termination depends upon the circumstances under which the withdrawal occurs."); Cohen v. Corwin, 980 So. 2d 1153, 1156 (Fla. 4th DCA 2008) ("If indeed [the plaintiffs' allegation] is true, and for instant purposes we must accept that it is, then there was a bona fide termination of the underlying claims in favor of the [plaintiffs]."); Verdon v. Song, 251 So. 3d 256, 259 (Fla. 5th DCA 2018) ("[T]he State was not required to explicitly affirm [the plaintiff]'s innocence before he could

9

maintain a cause of action for malicious prosecution."); Thompson, 596 U.S. at 39 ("To demonstrate a favorable termination of a criminal prosecution for purposes of the Fourth Amendment claim under § 1983 for malicious prosecution, a plaintiff need only show that his prosecution ended without a conviction."); Doss, 857 So. 2d at 995 ("Whether a withdrawal or abandonment of a lawsuit constitutes a bona fide termination in favor of a person against whom the suit was brought, depends on the total circumstances surrounding the withdrawal or abandonment.").

**C**

A civil conspiracy claim requires allegations of (1) an agreement between two or more parties; (2) to commit an unlawful act; (3) an overt act in furtherance; and (4) damages. See Philip Morris USA, Inc. v. Russo, 175 So. 3d 681, 686 n.9 (Fla. 2015). The plaintiff must make "clear, positive and specific allegations" and plead an underlying tort. Parisi v. Quadri de Kingston, 314 So. 3d 656, 661 (Fla. 3d DCA 2021). That is because "[t]he gist of a civil action for conspiracy is not the conspiracy itself but the civil wrong which is alleged to have been done pursuant to the conspiracy." Russo, 175 So. 3d at 686 n.9 (quoting Loeb v. Geronemus, 66 So. 2d 241, 243 (Fla. 1953)).

In this case, Steinmetz alleged that Pickholtz, with Gordon's assistance, fabricated evidence and made false reports, and that the couple "entered into a conspiracy" to prosecute her by engaging in "unlawful acts" to effectuate that end.  Relying on <u>Parisi</u>, appellees successfully contended below that these allegations were insufficient to withstand scrutiny.

In <u>Parisi</u>, the complaint "vaguely tie[d] the events together by alleging, in conclusory fashion, that the circumstances unfolded '[p]ursuant to an agreement between'" the defendants.  314 So. 3d at 662 (second alteration in original).  But here, unlike in <u>Parisi</u>, Steinmetz specified that Gordon actively assisted Pickholtz in fabricating evidence and making false reports, and she attached purported evidence of his participation to her complaint.  Accepting the allegations as true, as we must, Steinmetz's complaint plausibly identified an underlying tort and alleged an agreement and overt acts in a nonconclusory manner.

**D**

The elements of abuse of process are (1) an illegal, improper, or perverted use of process; (2) an ulterior motive; and (3) damages.  <u>Valdes</u>, 924 So. 2d at 867 n.2.  "The tort of malicious prosecution is concerned with maliciously causing process to issue, whereas the tort of abuse of process is concerned with the improper use of process <u>after</u> it issues."  <u>Marty v.</u>

11

Gresh, 501 So. 2d 87, 89 (Fla. 1st DCA 1987) (quoting Yoder v. Adriatico, 459 So. 2d 449, 450 (Fla. 5th DCA 1984)) (emphasis in original). Consequently, whether a plaintiff can prevail on an abuse of process claim "turns on . . . sufficient proof that [the defendant] misused process after it was served so as to exert some form of leverage over [the plaintiff]." Id. Alleging malicious intent and pre-process events are not enough to state a claim for abuse of process. See id. at 90.

Here, Steinmetz alleged that Pickholtz made a "perverted use of process" by refusing to retreat from her fabricated assertions. This allegation did not adequately allege a use of process after suit was filed or an ulterior motive, and therefore the trial court did not err in finding it facially insufficient. Even so, Steinmetz should have been granted leave to amend "at least one time in an attempt to state a cause of action" because the record did not conclusively establish that she could not "in good faith allege a set of circumstances sufficient to state a cause of action." Lambrix v. Dugger, 547 So. 2d 1265, 1265 (Fla. 1st DCA 1989); see also Price v. Miller & Solomon Gen. Contractors, Inc., 104 So. 3d 1251, 1252 (Fla. 4th DCA 2013) ("Refusal to allow an amendment is an abuse of the trial court's discretion unless it clearly appears that allowing the amendment would prejudice the opposing party, the privilege to amend has been abused, or amendment would be

12

futile.") (quoting <u>Vaughn v. Boerckel</u>, 20 So. 3d 443, 445 (Fla. 4th DCA 2009)).

**E**

Intentional infliction of emotional distress requires the following elements: (1) intentional or reckless conduct; (2) outrageousness beyond all bounds of decency; (3) causation; and (4) severe distress. <u>Deauville Hotel Mgmt., LLC v. Ward</u>, 219 So. 3d 949, 954–55 (Fla. 3d DCA 2017). The second prong is the gravamen of the tort. The Restatement (Second) of Torts § 46 cmt. d (Oct. 2024 ed.) describes the standard as follows:

> The cases thus far decided have found liability only where the defendant's conduct has been extreme and outrageous. It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"

In <u>Valdes</u>, this court held that conduct leading to a wrongful arrest, without more, does not satisfy this metric. <u>See</u> 924 So. 2d at 866. There, the court stated,

13

> While the anxiety and stress of being charged by the Division of Insurance Fraud with making false statements and being arrested by the State in connection with those charges is understandable, the appellees' behavior in investigating Valdes and then allegedly falsely reporting to the Division of Insurance that Valdes had committed fraud is not the type of conduct that is so outrageous in character and extreme in degree as to go beyond the bounds of decency and be deemed utterly intolerable in a civilized society.

Id. Steinmetz's allegations here were indistinguishable from the false reporting, arrest, and claimed injury we found inadequate in Valdes. We therefore impute no error to the dismissal of the intentional infliction of emotional distress count, save for the "with prejudice" designation. See Lambrix, 547 So. 2d at 1265; Price, 104 So. 3d at 1252. Accordingly, we affirm in part, reverse in part, and remand for further proceedings.

Affirmed, in part; reversed, in part; remanded.

FERNANDEZ, J., concurs.

LINDSEY, J., concurs in result only.